PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD D. JONES, | ) | CASE NO.   1:08CV1135 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | BENITA Y. PEARSON |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | **AND ORDER** |

Plaintiff Richard D. Jones sought judicial review of the Social Security Administration's partially favorable final decision which granted his application for Supplemental Security Income and denied his application for Disability Insurance Benefits (collectively "benefits").  The parties have consented to the jurisdiction of the undersigned Magistrate Judge.  ECF No. 14.  For the reasons provided below, the Court reverses the final Agency decision and remands the matter for the re-determination of residual functioning capacity and concomitant re-evaluation of disability onset date.

## I.  Introduction

After completing the obligatory five-step analysis for determining whether a claimant is disabled, the Agency found Jones to be disabled at the fifth and final step.  Essentially, the ALJ determined that, given Jones' severe impairments and limited functioning, there were not a significant number of jobs in the national economy that Jones could perform as of his fiftieth

(1:08CV1135)

birthday.  As a result, the ALJ granted Jones benefits at a date later than the date Jones requested (*i.e.*, his alleged onset date) and found him disabled as of his fiftieth birthday.[1]  Jones objects to the ALJ's determination on several grounds, including that the date of the disability determination deprives Jones of his eligibility for Disability Insurance Benefits and that the ALJ violated the treating physician rule.  Having thoroughly reviewed the record in the instant matter, the Court finds that the Agency's final decision while not perfect, contains only one error which requires reversal – the misinterpretation of a treating physician's opinion which resulted in a flawed residual functional capacity finding and may have adversely affected the ALJ's determination of disability onset date.  Therefore, the Court reverses the final Agency decision and remands the matter for further proceedings not inconsistent with this ruling.

## II.  Procedural History

On June 19, 2001, Plaintiff Richard D. Jones ("Jones") protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI"), alleging disability since June 15, 2000 due to heart problems, emphysema, high blood pressure, and arthritis.  (Tr. 64, 76); *see* 20 C.F.R. § 404.1503.[2]  Jones' claims were initially denied on November 16, 2001, and denied again upon reconsideration on March 1, 2002.  (Tr. 14.)  On April 4, 2002, Jones filed a request for an administrative hearing before an Administrative Law

_____

[1]  The Agency's date of the disability onset effectively rendered Jones eligible only for SSI.

[2]  The regulations governing both the DIB and SSI programs are virtually identical.  Therefore, except where otherwise necessary, the Court will refer only to the DIB regulations found at 20 C.F.R. § 404.1500- 404.1599.  The last two digits of the DIB regulation mirror the last two digits of the corresponding SSI regulation (*e.g*., 20 C.R.F.§ 404.1503 corresponds with 20 C.R.F. § 416.903).

(1:08CV1135)

Judge ("ALJ").  That hearing occurred on September 13, 2004.  (Tr. 14.)  Jones was represented by the same counsel who represents him in the instant matter.[3]

At the time of the hearing before the ALJ, Jones was 49 years old and a high school graduate.  (Tr. 1107.)  He described his past relevant work experience as that of a dishwasher and airport cleaner.  The ALJ found that Jones had not engaged in substantial gainful activity at any time relevant to his decision.  (Tr. 16.)  The ALJ also found that Jones has severe impairments of congestive heart failure secondary to drug-induced cardiomyopathy, fluid and diet restrictions, chronic obstructive pulmonary disease, and continued alcohol and tobacco use.  (Tr. 15-16.)  The ALJ determined, however, that Jones did not have an impairment or combination of impairments that met or medically equaled the listed impairments in Appendix 1, Subpart P, Regulation No. 4, Listing 4.02.  (Tr. 17.)  After considering the record in its entirety and consulting with Vocational Expert ("VE"), Thomas Nimberger, the ALJ concluded that Jones was unable to perform his past relevant work and, beginning on February 3, 2005, Jones' fiftieth birthday.  On that date, Jones became and remained disabled because there were not a significant numbers of jobs in the national economy that Jones could perform, due to his age, education, work experience and residual functional capacity.  (Tr. 26.)

On April 27, 2006, the ALJ issued her partially favorable decision.  (Tr. 16-27.)  The Appeals Council denied Jones' request for a review of that decision on April 7, 2008, making the ALJ's decision the final decision of the Agency and prompting Jones to timely appeal to this

_____

[3]  The ALJ noted that after the conclusion of the hearing, she received "voluminous records . . . from November 2004 through December 2005 necessitating repeated review of the case."  (Tr. 14.)

3

(1:08CV1135)

Court.  (Tr. 14.)

Jones has presented the following issues:

1.  The ALJ Violated the Treating Physician Rule in the following ways:

   A.   The ALJ Erred in Giving More Weight to the Opinion of a Non-Treating Consultative Physician that She Gave to the Opinions of Well Qualified Long Time Treating Physician.

   B.   The ALJ Erred in Substituting her Own Opinion for That of a Medical Source.

   C.   The ALJ Erred in Not Recontacting Jones' Treating Physician to Resolve Perceived Inconsistencies in the Record.

2.  The ALJ Erred in not Calling a Medical Expert to Testify Regarding Whether Jones' Impairment(s) met or Equaled a Listing.

ECF No. 16 at 9.

### III.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.

The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen*, 800 F.2d 535, 545

4

(1:08CV1135)

(6th Cir. 1986) (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).  The ALJ's

decision must be affirmed if it is supported by substantial evidence even if the reviewing court

would have decided the matter differently, and even if substantial evidence also supports a

different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999);

*Mullen*, 800 F.2d at 545.  "Even if supported by substantial evidence, however, a decision of the

Commissioner will not be upheld where the [Social Security Administration] fails to follow its

own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.2006).

In determining the existence of substantial evidence, the reviewing court must examine

the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The district

court may look into any evidence in the record, regardless of whether it has been cited by the

ALJ.  *Mullen*, 800 F.2d at 545.  The reviewing court, however, may not try the case *de novo*,

resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*, 889 F.2d at

681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## IV.  **Standard for Establishing Disability**

To establish disability under the Act, a claimant must show that she is unable to engage in

substantial activity due to the existence of "a medically determinable physical or mental

impairment that can be expected to result in death or that has lasted or can be expected to last for

a continuous period of not less than twelve months."  *See* 42 U.S.C. §§ 423(d)(1)(A),

1382(c)(a)(3)(A).  The claimant's impairment must prevent her from doing her previous work, as

5

(1:08CV1135)

well as any other work existing in significant numbers in the national economy.  *See* 42 U.S.C.

§§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step

sequential evaluation.  If a claimant can be found disabled or not disabled at any step of the

sequential evaluation, the review ends.  20 C.F.R. § 404.1520(a).  At Step One, the ALJ

considers the claimant's work activity.  A claimant is not disabled if engaged in substantial

gainful activity, *i.e.*, working for profit.  At Step Two, the ALJ considers the medical severity of

the claimant's impairments.  A claimant is not disabled if she does not have a severe medically

determinable physical or mental impairment that also meets the duration requirement in 20

C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration

requirement.  At Step Three, the ALJ determines whether the claimant has an impairment that

meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration

requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is disabled if she has

an impairment that meets the listing and the duration requirement.  Before considering the fourth

step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the

claimant's ability to perform physical and mental work on a sustained basis despite limitations

from impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits him to

perform past relevant work.  The claimant bears the burden of proof at steps one through four.

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  At Step Five, however, "the

burden shifts to the Commissioner to identify a significant number of jobs in the economy that

accommodate the claimant's residual functional capacity (determined at step four) and vocational

6

(1:08CV1135)

profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At the final step, Step Five, the ALJ considers the claimant's RFC and her age, education, and work experience to determine whether the claimant may work.  Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, then the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the ultimate burden of proof on the issue of disability.  *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability.").  Significantly, he bears the burden of proving disability up to Step Five of the sequential evaluation.  *See* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("the Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy").  The burden of proof regarding the establishment of disability onset date lies with the claimant.  *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).[4]

Moreover, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision.  *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  Lastly, the claimant must not only produce a diagnosis of an

---

[4]  Jones acknowledges this burden in the second sentence of his brief on the merits.  *"Jones' date last insured (DLI), the date by which he has to prove that he became disabled in order to be paid SSD benefits, is 6/3/03."* ECF No. 16 at 1 (Emphasis in original).

(1:08CV1135)

impairment, but also demonstrate correlative functional limitations.  *See* 20 C.F.R. §404.1512(c).

### V.  Law and Analysis

### A.  The Treating Physician Rule

It is axiomatic in Social Security law that the opinions of doctors identified as treating physicians are given greater weight than that attributed to other medical care providers.  *See* *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980); *see also* 20 C.F.R. § 404.1527(d)(2).  That privileged status exists "only if [those opinions] are supported by sufficient clinical findings and are consistent with the evidence."  *Bogle v. Sullivan*, 998 F.2d 342, 347-348 (6th Cir.1993).

Without specifying at exactly which step the errors occurred, Jones avers that the ALJ violated the treating physician rule in three different ways.  The Court addresses each herein.

### 1.  Dr. Packer

There seems to be no disagreement that Dr. Packer is a treating physician.

Against that backdrop, it is important to establish that Jones is incorrect in arguing that the ALJ "rejected" the opinion of Dr. Packer.[5]  The ALJ "assigned Dr. Packer's position less weight."  (Tr. 25.)  The distinction is meaningful because the regulations require that a treating physician's opinion be considered even if the ALJ determines that the opinion should not be

---

[5]  Jones relies on *Fisk v. Astrue,* 253 Fed. Appx. 580, 584-86 (6th Cir.2007) (*finding* ALJ erred in rejecting treating source testimony in favor of non-examining physician whose opinion was not based on a review of the complete case record).  In that case, the Court explained the ALJ erred in rejecting the opinion evidence of the treating physician because he failed to consider "the nature and extent" of the claimant's treatment relationship with the treating physician, including "the kinds and extent of examinations and testing [that the treating physician] performed or ordered from specialists and independent laboratories."  *Fisk,* 253 Fed. Appx. at 585.

8

(1:08CV1135)

given controlling weight.  Contrary to Jones' argument, *Fisk* is not controlling in this instance.

In *Fisk*, the ALJ expressly rejected the testimony of the claimant's treating physician.  *Fisk,* 253 Fed. Appx. at 585.  That is not the case here.  Nowhere in the record does the ALJ indicate that she expressly rejected Dr. Packer's opinion or adopted the opinions of the non-examining physicians rather than the opinion of treating physician, Dr. Packer.  Indeed, the opposite conclusion can be drawn from the record.  The ALJ's findings in Step Four explain that she rendered her decision "after careful consideration of the entire record" and that she considered opinion evidence in accordance with the requirement of 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2, 96-5, & 96-5p.  (Tr. 20.)  The references to §§ 1527 & 927 relate directly to the treating physician rule.

In this case, the ALJ clearly did not *reject* Dr. Packer's treating physician opinion.  *See* SSR 96-2p, 1996 WL 374188, at *4 ("[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.").  She explicitly states that she "assigned Dr. Packer's opinion less weight."  (Tr. 25.)  The ALJ thereby recognized that Dr. Packer's opinion should be given some weight.

In light of this recognition, Jones' argument that the ALJ misconstrued Dr. Packer's findings regarding Jones' ability to perform even sedentary work has merit, even if Dr. Packer's opinion was not given *controlling* weight. *See* SSR 96-2p.[6]  Twice, Dr. Packer stated that Jones

---

[6]  "Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is

(1:08CV1135)

"may be able to do sedentary work *for short periods of time*."  (Tr. 756 and 911.)  For reasons not

obvious to the Court, the ALJ misinterpreted Dr. Packer's statements as "Jones could perform

sedentary work 'when back to his usual baseline,'" leaving out the reference to "for short periods

of time." (Tr. 21.)  This misstatement mandates reversal because it erroneously allowed the ALJ

to overstate Jones' residual functional capacity prior to his fiftieth birthday.  In her hypothetical,

the ALJ accounted for Jones' limited ability to work during an eight-hour work day but not to the

extent agreed upon by Dr. Packer and another treating source who will be addressed more fully

below, Dr. Nagendra.[7]  Both Drs. Packer and Nagendra opined that Jones could sit and

stand/walk less than 2 hours in a total eight- hour work day.  *See infra* p. 25 (Appendix I); *see*

*also* (Tr. 754, 909, and 1007.)  The scenario painted by the ALJ's "hypothetical number two" has

---

not entitled to "controlling weight," not that the opinion should be rejected. Treating source
medical opinions are still entitled to deference and must be weighed using all of the factors
provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion
will be entitled to the greatest weight and should be adopted, even if it does not meet the test for
controlling weight."  SSR 96-2p at *4.

[7]  The ALJ's relied upon a hypothetical posed to the vocational expert which was stated as
follows:

      ALJ:  Hypothetical number two.  Again assume an individual [with] the same vocational
profile as the claimant.  We have a younger individual with a high school education.
Hypothetical person number two is the same as hypothetical person number one.  Except that this
individual required a sit, stand option, such that he can stand or walk only a half hour at a time.
But then must be able to sit down for a few minutes, not to exceed five minutes.  But then could
stand or, or walk for another half hour.  There is no limitation on his sitting.  However, I want
you to assume that during these position changes, that he remains at the work station.  Since that
individual could not perform the past work of the claimant, in hypothetical number one, I would
assume that this individual could not also.  Is that - -
      VE:  Correct, Your Honor.
      ALJ:  Okay. Would you be able to identify other jobs that this individual could perform?
      VE:  Yes, Your Honor.
(Tr. 1158-59.)

(1:08CV1135)

Jones sitting five minutes (at a workstation) after a thirty-minute interval of work during an eight-hour workday and would require Jones to be on his feet and, presumably, working over six hours a day. This far exceeds the treating physician's estimated "less than 2 hours" a day.

Thus, Jones' allegation of error is sustained. Upon remand, the ALJ is ordered to re-evaluate Jones' residual functioning capacity, in light of Dr. Packer's opinion that Jones "may be able to do sedentary work for short periods of time."

### 2. **Dr. Nagendra**

Jones also claims Dr. Shweta Nagendra as a treating physician. He argues that the ALJ ignored Dr. Nagendra's opinion and cites the Sixth Circuit decision in *Fisk v. Astrue*, in support of his argument.

### a. **Dr. Nagendra Qualifies as a Treating Physician**

"A physician is a treating source if he has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant . . . 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)].'" *Blakely v. Comm'r of Soc. Sec.*, — F.3d —, 2009 WL 3029653 at *7 (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1502).

Jones points out in his reply brief that the record reflects reports of at least three actual visits with Dr. Nagendra. *See* (Tr. 395-97, 853-55 & 1062-65.) These are in addition to two summaries submitted at the request of Jones' attorney. *See* (Tr. 1053-55.) (*noting* "Pt was seen for welfare paperwork and disability) & (Tr.1005-09.) (responding to attorney's request for completion of Cardiac Residual Functional Capacity Questionnaire). The Commissioner argues

11

(1:08CV1135)

that Dr. Nagendra is not a treating physician and, as if in *arguendo*, faults Jones for not drawing

attention to Dr. Nagendra medical opinions.  The Court does not find these arguments

persuasive.

   In response to the residual functioning questionnaire, Dr. Nagendra described the nature,

frequency and length of contact with Jones, as "Primary care — More than two years seen twice

a year or more in outpatient clinic."  (Tr. 1005.)  The length of time and frequency that Dr.

Nagendra treated Jones shows that Dr. Nagendra developed an extensive treatment relationship,

spanning over one year, and qualifies as one of Jones' treating physicians.  *See* 20 C.F.R. §

404.1502 ("We may consider an acceptable medical source who has treated or evaluated you

only a few times or only after long intervals (e.g., twice a year) to be your treating source if the

nature and frequency of the treatment or evaluation is typical for your condition(s)."); *see also*

*Pasco v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 828, 837-38 (6th Cir. 2005) (analyzing a medical

source as a treating source where the physician completed only a form without any supporting

treatment notes or any indication how long the physician had been treating the patient).  Thus, the

record demonstrates that Dr. Nagendra did more than "simply completed an assessment form at

the request of Plaintiff's attorney," but rather treated Jones for at least two years as a primary care

physician who was intimately aware of Jones' condition and thus provided a treating source

opinion requiring the ALJ's consideration.  ECF No. 17 at 19.

     **b. The ALJ's Failure to Mention Dr. Nagendra Constitutes Harmless Error[8]**

---

[8] The Court is mindful of not applying the harmless error standard simply because it thinks there is little chance of Jones' success on the merits.  *Wilson*, 378 F.3d at 541 ("a procedural error is

(1:08CV1135)

The Sixth Circuit has found that the harmless-error rule applies in the Social Security

context.  *Masters v. Astrue,* No. 07-123-JBC, 2008 WL 4082965, at *3 (E.D. Ky. Aug. 29, 2008),

(*citing Heston*, 245 F.3d at 535) (failure to explain weight given to treating physician is not

reversible error where ALJ's opinion is nonetheless supported by substantial evidence and error

was harmless).  In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004), the Sixth Circuit

maintained that its

> conclusion is consistent with the statement in *Connor v. United States Civil Service Commission*, 721 F.2d 1054, 1056 (6th Cir.1983), that 'an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits *or deprived of substantial rights because of the agency's procedural lapses*' (emphasis added).  A procedural right must generally be understood as 'substantial' in the context of this statement when the regulation is intended to confer a procedural protection on the party invoking it.  The Supreme Court has recognized the distinction between regulations "intended primarily to confer important procedural benefits upon individuals" and regulations "adopted for the orderly transaction of business before [the agency]."  *Am. Farm Lines v. Black Ball Freight Serv.,* 397 U.S. 532, 538-39, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970) (internal quotation marks omitted).  In the former case, the regulation bestows a "substantial right" on parties before the agency, and "it is incumbent upon agencies to follow their own procedures ... even where the internal procedures are possibly more rigorous than otherwise would be required."  *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *see also Vitarelli v. Seaton,* 359 U.S. 535, 540, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 267, 74 S.Ct. 499, 98 L.Ed. 681 (1954).  In contrast, in the case of procedural rules "adopted for the orderly transaction of business," an agency has the discretion "to relax or modify its procedural rules" and such action "is not reviewable except upon a showing of substantial prejudice to the complaining party."  *Am. Farm Lines,* 397 U.S. at 539, 90 S.Ct. 1288 (quotation omitted). Section 1527(d)(2) falls in the former category, creating an important procedural safeguard

_____

not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.").  Rather, the Court applies the harmless error analysis cautiously, taking care to avoid rewriting an ALJ's decision *post hoc* even when substantial evidence exists to support the ALJ's decision.  *Id.*

(1:08CV1135)

for claimants for disability benefits.  *Snell,* 177 F.3d at 134.

        That is not to say that a violation of the procedural requirement of §
1527(d)(2) could never constitute harmless error.  For instance, if a treating source's
opinion is so patently deficient that the Commissioner could not possibly credit it, a
failure to observe § 1527(d)(2) may not warrant reversal.  *Cf. NLRB v. Wyman-
Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (plurality
opinion) (where "remand would be an idle and useless formality," courts are not
required to "convert judicial review of agency action into a ping-pong game").

*Wilson,* 378 F.3d at 546-47.

        Additionally, in *Wilson*, the Sixth Circuit made clear that "there is also the possibility that

if the Commissioner adopts the opinion of the treating source or makes findings consistent with

the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's

opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."

*Wilson,* 378 F.3d at 547.  As another alternative, that Court also offered that "perhaps a situation

could arise where the Commissioner has met the goal of § 1527(d)(2)-the provision of the

procedural safeguard of reasons-even though she has not complied with the terms of the

regulation."  *Id.*

        In *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir.2001), "the

court held that the ALJ's failure to discuss the report of the claimant's treating physician

constituted harmless error."  *Wilson,* 378 F.3d at 547.  The *Heston* Court noted that "[a]lthough

the ALJ should have included a reference to the [treating physician's] report in its findings, the

failure to do so, in this case, was harmless error."  *Heston,* 245 F.3d at 537.  The Court observed

that "[d]espite his failure to address the treating physician's opinion, the ALJ in *Heston* had

considered the limitations described by that physician in determining whether the claimant could

find other work at the relevant step of the sequential analysis."  *Wilson,* 378 F.3d at 547 (*citing*

14

(1:08CV1135)

*Heston*, 245 F.3d at 536).  And the Court concluded that, "[t]here was no reason to remand the case because, wittingly or not, the ALJ attributed to the claimant limitations consistent with those identified by the treating physician."  *Id.* at 547-48.

Recently, the Sixth Circuit has reiterated its admonition that "the Commissioner must follow his own procedural regulations in crediting medical opinions."  *Blakley v. Comm'r of Soc. Sec.*, — F.3d —, 2009 WL 3029653 at *10.  The *Blakley* Court also recalled that in an earlier ruling, it had cautioned that "an agency's failure to follow its own regulations may cause 'unjust discrimination,' 'deny adequate notice,' and consequently 'may result in a violation of an individual's constitutional right to due process.'"  *Id.* at *10 (*citing Wilson*, 378 F.3d at 545 (*quoting Sameena, Inc., v. U. S. Air Force*, 147 F.3d 1148, 1153 (9th Cir.1998))).  The *Blakley* decision did not contradict or overrule *Heston*.  Also in *Wilson*, the Sixth Circuit acknowledged that "where 'remand would be idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'"  *Wilson*, 378 F.3d at 547 (*quoting NLRB v. Wyman-Gordon*, 394 U.S. at 766 n.6).

Dr. Nagendra first examined Jones in 2003, about two years prior to issuing her December 5, 2005 Residual Functioning Capacity Questionnaire.  In that form, Dr. Nagendra provided that Jones was an NYHA Class II and did not have "marked limitation of physical activity," in contrast to Dr. Packer's assessments that Jones  was NYHA Class II-III and had "marked limitation of physical activity."  *See infra* p. 25 (Appendix I) (depicting the RFC Questionnaire responses of Dr. Nagendra and Dr. Packer); *see also* (Tr. 752.).  In Dr. Nagendra's opinion,  Jones' limitations were less severe than in Packer's.  Nonetheless, when the totality of

15

(1:08CV1135)

both doctor's responses are considered, there are far more similarities in the residual capacity findings of Drs. Packer and Nagendra than differences.  These similarities exist regarding the doctors' opinions about Jones' inability to tolerate even low stress jobs; the frequent occurrence of cardiac symptoms; "guarded" or "poor" prognosis; Jones' inability to sit, stand or walk no longer than 2 hours in an 8-hour work day; frequent or hourly need for unscheduled breaks; and the need to elevate his legs 50% of the time during an 8-hour work day.  Dr. Nagendra opined that Jones may be absent more than four times a month while Dr. Packer estimated Jones' absence from work to be about twice a month. *See infra* p. 25 (Appendix I); *see also* (Tr. 1005-09.) (Dr. Nagendra's, 12/05/05) and (Tr. 752-56.) (Dr. Packer's, 9/10/03).

The instant case is similar to *Heston*.  The ALJ did not specifically address Dr. Nagendra's opinions.  Because Dr. Nagendra's opinions were almost identical to those of Dr. Packer, which the ALJ did address in detail, **"**wittingly or not," the ALJ attributed to Jones limitations consistent with those identified by both treating physicians.  Thus, the ALJ's failure in her written opinion to specifically attribute those same (or less restrictive) findings to Dr. Nagendra amounts to harmless error.

The ALJ should have included a reference to Dr. Nagendra's report in her findings but, under the circumstances of this case, failure to do so was harmless.  *See Heston* 245 F.3d at 536. Therefore, because the ALJ considered Jones' limitations described by Dr. Nagendra in her analysis as well as in her hypothetical posed to the vocational expert, failure to mention Dr. Nagendra's report does not, alone, mandate a reversal of the ALJ's determination that Jones was not disabled prior to his fiftieth birthday.

16

(1:08CV1135)

### 2.   The ALJ did not Substitute her Knowledge for that of the Medical Source

Jones argues that the ALJ substituted her own medical opinion in determining Dr.

Packer's opinion to be internally inconsistent and inconsistent with the record as a whole.  *See*

ECF No. 16 at 11-12; (Tr. 21.)  The Court disagrees.

Dr. Packer assessed Jones' NYHA Class at II-III[9] accompanied with a description of

Jones' capabilities using terms from only class III, *e.g.*, "incapable of performing even low stress

jobs" and markedly reduced functional capacity."  (Tr. 753, 908.)  Dr. Packer also described

Jones' impairment as disabling, but then made statements that Jones may or might be able to

perform sedentary work in some capacity.  (Tr. 756, 911.)  The ALJ's finding of internal

inconsistency in Dr. Packer's report is supported by the record and not in violation of the treating

physician rule.[10]

Additionally, Jones claims the ALJ came to a medical conclusion when she stated Jones'

"episodes of acute CHF were preceded by periods of noncompliance with prescribed treatment."

(Tr. 21.)  The ALJ did not assert a medical opinion nor did she "pick through" the record as

Jones claims.  ECF No. 16 at 12.  The ALJ thoroughly examined the record evidence and found a

factual correlation of noncompliance and episodes of worsening CHF.  *See* (Tr. 21-22.)

Thus, the ALJ did not base either of these findings on her lay medical opinion as Jones

---

[9]  Class II reflects, "[s]light limitation of physical activity.  Comfortable at rest, but ordinary
physical activity results in fatigue, palpitation, or dyspnea."  ECF No. 16, Ex. A.  Class III
reflects, "[m]arked limitation of physical activity.  Comfortable at rest, but less than ordinary
activity causes fatigue, palpitation, or dyspnea."  ECF No. 16, Ex. A.

[10]  Dr. Nagendra's opinion supports the ALJ's in that Dr. Nagendra found Jones to be Class II
without marked limitation of physical activity.  *See infra* p. 25 (Appendix I); (Tr. 1005-09.).

17

(1:08CV1135)

contends, but based the findings on the record evidence.  Accordingly, this argument is overruled.

### 3.  The ALJ did not Err in not Re-contacting the Treating Physician

Jones argues that the ALJ should have re-contacted treating physician, Dr. Packer to resolve any concerns the ALJ had regarding the effect of Jones' "'history of noncompliance *and* whether the work restrictions contained in [Dr. Packer's] opinion would remain the same if Mr. Jones[] adhered to prescribed treatment[.]'"  ECF No. 16 at 14 (*quoting* (Tr. 22.)).  Jones directs the Court to several Agency regulations and numerous cases (none from the Sixth Circuit) that stand for the general proposition that an ALJ "*must*" re-contact a physician "to determine whether the additional information that is needed is readily available, and to seek clarification or elaboration."  ECF No. 16 at 15.  The regulations require that the Agency develop a complete medical history by making every reasonable effort to obtain medical reports from medical sources.  20 C.F.R. § 404.1512(d).  When the information received from the medical source is "inadequate . . . to determine whether [one] is disabled," *e.g.*, "contains a conflict or ambiguity that must be resolved," the Agency will re-contact the treating physician to assist the Agency in making a disability determination.  20 C.F.R. § 404.1512(e).  The Court agrees with these regulations and cases that require such additional contact when the reports and opinions are not clear or are otherwise inadequate.  That is not the case here.

The statement Jones argues that the ALJ should have re-contacted Dr. Packer about is not an inadequacy — as described in § 404.1512(e) —  contained within Dr. Packer's report.  The ALJ relied upon this statement as additional support for assigning Dr. Packer's opinion less

18

(1:08CV1135)

weight.  *See* (Tr. 22.)  The ALJ put forth and relied upon additional reasons to accord Dr.

Packer's opinion less weight for being internally inconsistent and inconsistent with the record as

a whole.  *See* (Tr. 20-21.)  Because the ALJ relied upon other substantial evidence in the record,

the statement challenged by Jones does not render Dr. Packer's opinion "inadequate."  Nor does

it "contain a conflict or ambiguity that *must* be resolved" in order for the Agency "to determine

whether [Jones] is disabled" given that the ALJ found Jones disabled and eligible for SSI.  *See* §

404.1512(e); (Tr. 27.)

Dr. Packer acknowledges Jones' noncompliance with prescribed treatment.  *See* (Tr. 906.)

Jones' counsel does as well.  *See* ECF No. 16 at 13.  The Agency's counsel provides lists of

episodes establishing a pattern of noncompliance during 2003 and 2004.  *See* ECF No. 17 at 8-9,

nn.4-26.

Jones errs in only considering the first half of the ALJs statement – "It is unclear from Dr.

Packer's opinion whether he considered Mr. Jones' history of  noncompliance."  A reasonable

reading is that the ALJ is positing that "it is unclear from Dr. Packer's opinion whether he

considered Mr. Jones' history of  noncompliance *and* whether the work restrictions contained in

his opinion would remain the same if Jones adhered to prescribed treatment." (Tr. 22.) (Emphasis

added).  Accordingly, this argument is overruled.

### B.  The ALJ Properly Evaluated Jones' Impairment Without the Aid of a Medical Expert

At the Third Step of the sequential evaluation, an ALJ determines whether the claimant

has an impairment that meets or equals an impairment listed at 20 C.F.R. Part 404, Subpart P,

Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If an impairment exists that meets the description

19

(1:08CV1135)

of a Listing or its equivalent, the claimant will be found disabled.  *See* 20 C.F.R. § 404.1520(d)

("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1

or is equal to a listed impairment(s), we will find you disabled without considering your age,

education, and work experience.").  The Supreme Court has emphasized that "for a claimant to

show that his impairment matches a listing it must meet *all* of the specified medical criteria."

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added).  Significantly, a claimant has the

burden of showing that he has satisfied each individual requirement of a Listing.  *Thacker v. Soc.*

*Sec'y Admin.*, 93 F. Appx. 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or

equals a listed impairment, he must present specific medical findings that satisfy the various tests

listed in the description of the applicable impairment or present medical evidence which

describes how the impairment has such equivalency.").  "It is insufficient that a claimant comes

close to meeting the requirements of a listed impairment."  *Elam ex rel. Golay v. Comm'r of Soc.*

*Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citations omitted).

     In the instant case, the ALJ found that Jones does not *meet* Listing 4.02 because he failed

to comply with prescribed treatment regimen and did not satisfy every criteria of the Listing,

specifically section 4.02A.[11]  (Tr. 18-19.)  Jones argues that he meets or *medically* equals the

---

[11]  **Listing 4.02**
      Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described
      in 4.00D2. The required level of severity for this impairment is met when the requirements in both A
      and B are satisfied.
      A. Medically documented presence of one of the following:

          1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than
          6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an
          episode of acute heart failure); or

          2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness

(1:08CV1135)

listing and the ALJ was obligated by SSR 96-6p to call a medical expert to resolve the matter.

Substantial evidence supports the ALJ's findings, on this point.  In order to meet Listing 4.02, Jones must have shown the symptoms described in the listing while also being compliant with "a regimen of prescribed treatment."  While the record shows that Jones "reported misplacing his med[ication]s" on at least one occasion, the record is replete with evidence that

--------

totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

B. Resulting in one of the following:
1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
    a. Dyspnea, fatigue, palpitations, or chest discomfort; or

    b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

    c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

    d.  Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.02.

21

(1:08CV1135)

Jones admitted not taking his medication regularly, continuing to consume drugs, including alcohol and marijuana, and not adhering to dietary and fluid restrictions, foreclosing his ability to meet Listing 4.02. (Tr.18, 19); *see also* ECF No. 17 at 6-11, nn.4-26 (Defendant's Brief). The ALJ also found that Jones failed to *medically meet* Listing 4.02 because he had not been compliant with prescribed treatment. (Tr. 19.) The ALJ bolstered her conclusion by opining that Jones failed to meet section 4.02A because 4.02 requires that he meet the criteria for both subsections A and B. The record reflects the medical opinions of two State agency Physicians, Walter Holbrook and Willa Caldwell. (Tr. 19.) Dr. Holbrook completed a Form SSA-831 indicating that, upon initial consideration, Jones did not have a severe impairment that met or medically equaled a Listing. (Tr. 44.) Dr. Caldwell indicated, upon reconsideration, that Jones did not have a severe impairment that medically equaled a Listing. (Tr. 136.)

Despite Jones' contention to the contrary, the ALJ was not required to consult with a medical expert in determining that Jones did not medically equal a listing. SSR 96-6p states, in pertinent part, that:

> When an administrative law judge or the Appeals Council finds that an individual's impairment(s) *is not equivalent in severity to any listing*, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant. *However, an administrative law judge must obtain an updated medical opinion from a medical expert in the following circumstances*:
>
> > * When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
> >
> > * When additional medical evidence is received that *in the opinion of the administrative law judge* or the Appeals Council may change the

22

(1:08CV1135)

> State agency medical or psychological consultant's finding that the
> impairment(s) is not equivalent in severity to any impairment in the
> Listing of Impairments.

> When an updated medical judgment as to medical equivalence is required at the
> administrative law judge level in either of the circumstances above, the
> administrative law judge must call on a medical expert.

SSR 96-6p (Emphasis added).  Jones claims that the second set of circumstances pertains to him.

The Court disagrees.  The record does not reflect that the ALJ was of the opinion that the state

agency consultant's findings could change and there is no such state agency finding.  There is,

however ample evidence of Jones' noncompliance as stated above.

As Jones aptly points out, HALLEX, the Agency's Hearing, Appeals and Litigation Law

Manual, prescribes when ALJs *must* obtain the opinion of a medical expert, to wit:

> B. When the ALJ Must Obtain ME Opinion

> The ALJ must obtain an ME's opinion, either in testimony at a
> hearing or in responses to written interrogatories:

>> [1] When the Appeals Council or a court so orders.

>> [2] To evaluate and interpret background medical test data.
>> (See I-2-5-14 D., Medical Test Data.)

>> [3] When the ALJ is considering a finding that the claimant's
>> impairment(s) medically equals a medical listing.

Hallex I-2-5-34.  None of the three mandatory provisions apply to Jones — as he half-heartedly

concedes in his reply brief — and thus, the Agency's own manual did not require the ALJ to

consult a medical expert.  *See* ECF No. 18 at 2.

Accordingly, the Court finds that the ALJ did not err by not consulting with a  medical

expert in determining that Jones did not medically equal a listing.  This error is overruled.

23

(1:08CV1135)

## VI.  Conclusion

The Court finds that the otherwise thorough decision of the ALJ contains an error that mandates reversal of the partially favorable final Agency decision that Richard D. Jones was not disabled until February 3, 2005, his fiftieth birthday.  Because the ALJ's assessment of Jones' residual functional capacity is driven by consideration of all of the relevant medical and other evidence, including the correct interpretation of the treating sources' stated physical limitations, the ALJ's assessment of Jones' residual functional capacity, its role in concluding that he could perform other jobs in the national economy and his disability onset date are flawed and must be revisited.  *See* 20 C.F.R. § 416.945(a)(3).

Accordingly and pursuant to the Fourth Sentence of 42 U.S.C. § 405(g), the final agency decision is reversed and remanded for a re-evaluation of Richard D. Jones' residual functional capacity and disability onset date.  This re-evaluation should  give proper consideration to Jones' physical limitations as identified in the Residual Functional Capacity Questionnaires and other relevant documents provided by Jones' treating physicians, Drs. Packer and Nagendra.

IT IS SO ORDERED.

 September 29, 2009                                        s/ *Benita Y. Pearson*
Date                                                                    United States Magistrate Judge

24

(1:08CV1135)

# Appendix I

(1:08CV1135)

| Treating Physician Cardiac Residual Functional Capacity Questionnaire Comparison Summary | | | |
|---|---|---|---|
| | **Dr. Packer 9/10/2003** | **Dr. Packer 11/10/2004** | **Dr. Nagendra 12/5/2005** |
| **1.  Nature of physician** | Attending | Attending | Primary Care |
| **2.  Diagnosis** | 1.  Non-ischemic Cardiomyopathy 2.  NYHA Class II-III | 1.  Non-Ischemic Cardiomyopathy 2.  CHF Functional Class II-III 3.  COPD | NYHA Class II |
| **3.  Findings** | Ejection Fraction 10% | 1.  Severely decreased left ventricular function; 2.  Ejection fraction 20% | 1.  Ejection fraction 20% 2.  Severe pulmonary hypertention 3.  COPD |
| **4.  Symptoms** | chest pain on exertion; shortness of breath; nausea; dizziness; radiating pain from left chest to left shoulder | chest pain; shortness of breath; fatigue; edema | chest pain; shortness of breath; fatigue; dizziness |
| **5.  Pain** | once/day; substernal often at rest; non-radiating; lasts 25 minutes | atypical chest pain, probably not anginal | No |
| **6.  Malingerer** | No | No | No |
| **7.  Marked limitation of physical activity** | Yes | Yes | No |

(1:08CV1135)

| Treating Physician Cardiac Residual Functional Capacity Questionnaire Comparison Summary | | | |
|---|---|---|---|
| | **Dr. Packer 9/10/2003** | **Dr. Packer 11/10/2004** | **Dr. Nagendra 12/5/2005** |
| **8.  Stress (role/degree)** | Role: not significant Degree: Incapable of low stress jobs | Role: not significant Degree: Incapable of low stress jobs | Role: None Degree: Incapable of low stress jobs |
| **9.  Emotional difficulties** | No | No | No |
| **10.  Emotional contributions to limitations** | No | No | No |
| **11.  Frequency of cardiac symptoms** | Frequently | Frequently | Frequently |
| **12.  Symptoms consistent** | Yes | Yes | Yes |
| **13.  Prescribed medications** | Illegible | Illegible | Illegible |
| **14.  Prognosis** | Poor | Poor | Guarded prognosis |
| **15.  12 Month duration** | Yes | Yes | Yes |
| **16.  Estimated functional limitations in a competitive work situation** | | | |
| **16a.  Walk __city blocks** | Less than 1 | Blank | 1 |
| **16b.  Ability to sit and stand/walk during work day** | Less than 2 hours | Less than 2 hours | Less than 2 hours |
| **16c. Sit, stand, or walk at will needed?** | Yes | Yes | Yes |
| **16d. Unscheduled breaks required?** | Yes, frequently, cannot estimate | Yes, less frequent if work is sedentary; cannot estimate | Yes, 1x/hour; 15-30 minutes |

(1:08CV1135)

| Treating Physician Cardiac Residual Functional Capacity Questionnaire Comparison Summary | | | |
|---|---|---|---|
| | **Dr. Packer 9/10/2003** | **Dr. Packer 11/10/2004** | **Dr. Nagendra 12/5/2005** |
| **16e.  Elevate legs with prolonged sitting?** | Yes, 2 feet, 50% | Yes, 2 feet, 50% | Yes; 30 degrees; more than 50% |
| **16f.  Lifting limitations** | Less than 10 lbs. occasionally; Never more than 10 lbs | Less than 10 lbs. occasionally; Never more than 10 lbs | Less than 10 lbs. occasionally; Never more than 10 lbs |
| **16g. Ability to stoop and crouch during work day?** | Blank | Cannot estimate | Stoop 5% Crouch 5% |
| **16h.  Should avoid** | 1.  All exposure to: extreme cold and heat; hazards<br><br>2.  Moderate exposure to: Fumes<br><br>3.  Concentrated exposure to: Wetness; Humidity; Noise<br>4. No Restriction: None | 1.  All exposure to: extreme cold and heat; fumes; hazards<br><br>2.  Moderate exposure to: Wetness; Humidity<br><br>3.  Concentrated exposure to: Noise<br><br>4.  No Restriction: None | 1.  All exposure to: extreme cold and heat; fumes; hazards<br><br>2.  Moderate exposure to: None<br><br>3.  Concentrated exposure to: Humidity<br><br>4.  No Restriction: Wetness and Noise |
| **16i.  Good days and bad days; Absence from work?** | Yes; 2x/Month | Yes; 2x/month | Yes; 4+x/ month |
| **17.  Additional tests or procedures** | Blank | Blank | None |

(1:08CV1135)

| Treating Physician Cardiac Residual Functional Capacity Questionnaire Comparison Summary | | | |
|---|---|---|---|
| | **Dr. Packer 9/10/2003** | **Dr. Packer 11/10/2004** | **Dr. Nagendra 12/5/2005** |
| **18.  Other limitations:** | Severe disabling heart failure; may be able to do sedentary work for short periods of time | Severe cardiomyopathy; disabling heart failure; at best he might be able to do sedentary work for short periods of time when back to his usual baseline | Severe heart failure |

Page 4 of  4